IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 14-4028-01-CR-C-SRB |
| | ) | |
| | ) | |
| CHARLES MILTON BOWERS, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Before the Court is Defendant Charles Milton Bower's Motion to Suppress. The Government filed suggestions in opposition on December 23, 2014, and a hearing was held before the undersigned on January 15, 2015. At the request of the Defendant, the Court granted several extensions of time to file supplemental suggestions in support of the motion to suppress. On May 8, 2015, Defendant filed supplemental suggestions in support of his motion to suppress. No response was filed by the Government to the supplemental suggestions.

The Defendant's argument in support of suppression of the evidence is that law enforcement's stop of Defendant's vehicle lacked the necessary probable cause and/or reasonable suspicion, and therefore, the stop of Defendant's vehicle and the subsequent search violated Defendant's Fourth Amendment constitutional rights. Specifically, Defendant asserts that the cracked and/or broken (hereinafter "cracked/broken") red tail light cover on his vehicle, for which he was stopped, was in compliance with Missouri law. Defendant argues that his taillights were emitting the necessary red light at the required distance, despite being cracked/broken, and therefore, did not violate Missouri state law. With no apparent violation of the law, Defendant asserts that law enforcement's stop of his vehicle lacked probable cause and/or reasonable suspicion, and therefore, violated his Fourth Amendment rights.

### Statement of Facts

On May 28, 2014, Columbia Police Officer Mark Fitzgerald stopped a 2013 white Volkswagen passenger car. The vehicle drew the attention of Officer Fitzgerald because it had a cracked/broken driver's side taillight, which was allowing white light to be visible from the

vehicle's taillight. Officer Fitzgerald understood the cracked/broken taillight to be improperly functioning, and thus, a violation of Missouri state traffic law. Prior to stopping the vehicle, Officer Fitzgerald ran the license plate through Columbia Police Department's (CPD) Record System. The CPD Record System indicated that the owner of the vehicle, Charles Bowers, was on probation for possession of a controlled substance. The CPD Record System further indicated that the vehicle had been recently stopped by Columbia Police Department on May 11, 2014, at which time the passenger of the vehicle was arrested for drug paraphernalia. After running the license plate, Officer Fitzgerald pulled behind Defendant's vehicle and initiated a traffic stop.

After making initial contact with the driver (determined to be the Defendant), Officer Fitzgerald requested that Defendant step out of the vehicle. Officer Fitzgerald told Defendant why he was pulled over and showed him the cracked and/or broken taillight which was the basis for the stop. Officer Fitzgerald and Defendant discussed the possibility of Defendant putting red tape on the cracked/broken taillight to prevent Defendant from getting pulled over again for the same violation. There is no dispute that Defendant had a cracked/broken taillight. Defendant testified that there was a hole about the size of a fingernail in his taillight, and Officer Fitzgerald testified that the taillight was cracked/broken with a hole about the size of a quarter.

Officer Fitzgerald requested consent to search Defendant's person and his vehicle to which Defendant consented. When searching the vehicle, Officer Fitzgerald noticed that a small piece of plastic, that appeared to be the corner of a plastic baggie, was visible underneath the plastic trim piece located on the driver's side of the center console. This trim piece was the approximate location of where the driver's right knee would be when seated in the vehicle. Officer Fitzgerald pulled on this plastic and a knotted baggie came out. Inside the knotted baggie were 15 smaller baggies. In 14 of these smaller baggies was a white, cakey substance consistent in appearance with crack cocaine. In one small baggie was a green leafy substance consistent with the appearance of marijuana. The white, cakey substances field-tested positive for cocaine base. The Defendant was taken into custody and transported to the police station.

**Discussion**

The issue in this case is whether Officer Fitzgerald had probable cause to stop Defendant's vehicle based on Defendant's vehicle having a cracked/broken tail light? Defendant argues there was no probable cause or reasonable suspicion to support that his cracked/broken taillight was a violation of Missouri traffic law. Defendant asserts that under Missouri law a

2

cracked/broken taillight which still emits red light at the required distance of five hundred feet is not a violation of Missouri traffic law. Defendant asserts that Officer Fitzgerald made a mistake of law when he stopped Defendant's vehicle based on his belief that defendant's cracked/broken taillight violated Mo. Rev. Stat. § 307.075. Defendant argues a mistake of law cannot support reasonable suspicion or probable cause.

The Government argues Officer Fitzgerald had probable cause to stop Defendant's vehicle. The Government argues that Officer Fitzgerald had an objectively reasonable suspicion to believe that Defendant's cracked/broken taillight was a violation of Mo. Rev. Stat. § 307.075. The Government argues that a cracked and/or broken red taillight cover, or a red taillight cover which caused white light to be emitted instead of, or in addition to, the red light, was not properly operating as required under Mo. Rev. Stat. § 307.075. The Government argues that the statute doesn't only mandate red light emit from the taillights visible from a distance of 500 feet, but further mandates that the taillights be in operable condition. The Government argues that, under Missouri law, operable means that no white light is shining through the taillight.

**I.     Mo. Rev. Stat. § 307.075**

Mo. Rev. Stat. § 307.075 sets forth the Missouri traffic law for motor vehicle taillights. The statute provides in relevant part as follows:

> (1) Every motor vehicle … shall be equipped with at least two rear lamps, … which when lighted will exhibit a red light plainly visible from a distance of five hundred feet to the rear.
>
> …
>
> (4) Any person who knowingly operates a motor vehicle without the lamps required in this section in operable condition is guilty of an infraction.

**II.    Probable Cause and Reasonable Suspicion**

It is well established that any traffic violation, regardless of its perceived severity, provides an officer with probable cause to stop the driver. United States v. Jones, 275 F.3d 673, 680 (8th Cir. 2001). This probable cause however, must be based on the officer's reasonable suspicion that a traffic law has been violated. Heien v. North Carolina, ___ U.S. ___, ___, 135 S.Ct. 530, 536 (2014); United States v. Thomas, 93 F.3d 479, 485 (8th Cir. 1996). Reasonable suspicion that a traffic law has been violated requires a particularized and objective basis for suspecting the particular person stopped of breaking a traffic law. Heien, 135 S.Ct. at 536; Navarette v. California, ___U.S. ___, ___, 134 S.Ct. 1683, 1690-91 (2014).

3

Here, Officer Fitzgerald testified that he stopped Defendant's vehicle because he viewed a cracked/broken taillight on Defendant's car which was emitting white light, and believed that such taillight was not operational as required by Missouri traffic law, Mo. Rev. Stat. § 307.075. If Officer Fitzgerald was correct that §307.075 is violated by a cracked or broken taillight emitting white light, then he had reasonable suspicion to believe that Defendant was violating Missouri traffic law, Mo. Rev. Stat. § 307.075, and had probable cause to stop Defendant's vehicle. Thus, the issue for this Court to decide is whether Officer Fitzgerald had reasonable suspicion for believing that Defendant's cracked/broken taillight violated Mo. Rev. Stat. § 307.075.

### A. Missouri Law interpreting Mo. Rev. Stat. § 307.075's taillight requirements

There is only one Missouri case which has discussed Mo. Rev. Stat. § 307.075 as applied to taillight requirements. That case is Kienzle v. Director of Revenue, State of Missouri, 944 S.W. 2d 326 (Mo. App. 1997). Despite this opinion being issued in 1997, it remains relevant because the language of the § 307.075 has not been modified since that time. In discussing § 307.075, the Kienzle Court states in relevant part as follow: "there was evidence that Corporal Hobson was justified in stopping Respondent.…. Her vehicle had a broken right taillight, with "white light" shining through, an apparent violation of § 307.075." Id. at 328. While this statement by the Kienzle Court is made during the Court's passing review of the circumstances at issue in the case regarding suspension of a driver's license, it nonetheless, clearly shows the Court's belief that a broken taillight with white light shining through is an apparent violation of § 307.075. Defendant's arguments against this interpretation of § 307.075, fail to point this Court to any other authority, state or federal, interpreting this Missouri statute as applied to taillight requirements. Thus, Officer Fitzgerald's interpretation, which directly aligns with Kienzle, would provide objectively reasonable suspicion to believe that Defendant's cracked/broken taillight, through which white light was shining, was a violation of the Missouri traffic law taillight requirements set forth in Mo. Rev. Stat. § 307.075.

### B. How other states interpret their taillight regulation statutes

Defendant's cite to other states' case law interpreting their own state statutes regulating taillights is not controlling and is minimally persuasive in interpreting Mo. Rev. Stat. § 307.075. To the extent this case law is minimally persuasive, the Court will address it briefly.

Defendant argues that other states' statutes, which are similar to that of Missouri, have

4

been interpreted as not being violated by a cracked/broken taillight. See United States v. Lopez-Valdez, 178 F.3d 282 (5th Cir. 1999) (5th holds that Texas traffic statute does not give police officers authority to stop vehicles with cracked taillight lenses that permit some white light to be emitted with red light); United States v. Harris, 2013 WL 3339055 (N.D. Fla 2013) (Federal District Court held that white light emitting through a crack in a taillight lens cover does not render a vehicle noncompliant with Florida law regulating taillights). While this is a true statement of how some states have interpreted their state statutes, it is also true that there are states which have interpreted their similar taillight regulation statutes to be violated by a cracked/broken taillight. See United States v. Wekall, 87 Fed. Appx. 79 (unpublished), 2004 WL 232388 (9th Cir. 2004) (9th Cir. held that a crack in a taillight was sufficient to support probable cause to stop a vehicle; under California law a crack in taillight cover is a violation of California Vehicle Code requiring that taillights be in good working order); United States v. Ettress, 232 F.3d 897 (unpublished), 2000 WL 1137451 (9th Cir. 2000) (9th Cir. finds that a cracked taillight constitutes a violation of the California Vehicle Code, and therefore, supports probable cause for a vehicle stop). This split shows that interpretation of a state's traffic laws, which regulate vehicle taillights, to be a state specific issue. Thus, the fact that courts in Texas and Florida have interpreted Texas and Florida's statutes as not being violated by a cracked/broken taillight is not determinative in how this Court should interpret Missouri's statute.

      Courts on both sides of the issue of whether a cracked/broken taillight does or does not violate a particular state's statute look at two key elements in the process of interpreting their state's statute. The two key elements, regardless of the conclusion ultimately reached by a court, are the text of the particular state's statute and that particular state's case law interpreting the statute. See Ettress, 232 F.3d 897, 2000 WL 1137451 (citing to state court case People v. Vermouth, 20 Cal.App.3d 746 (1971), and text of the California Vehicle Code in support of determination that a cracked taillight violates the California Vehicle Code); Wekall, 87 Fed. Appx. 79, 2004 WL 232388 (relying on California state court case People, 20 Cal.App.3d at 752, and text of the California Vehicle Code, court determined that a crack in a taillight was sufficient to support probable cause to stop a vehicle because the taillight was a violation of the requirement that the taillight be in good working order). See also Lopez-Valdez, 178 F.3d 282 (5th Circuit cites to the text of the Texas state statute and Texas state court case, Vicknair v.

5

Case 2:14-cr-04028-SRB   Document 44   Filed 07/22/15   Page 5 of 9

State, 751 S.W.2d 180 (Tex. Crim. App. 1986), for authority that under Texas statute, police officers do not have authority to stop vehicles with cracked taillight lenses); Harris, 2013 WL 3339055 (Federal District Court reviewed Florida state statute and Florida's state law authority to make determination that crack in a taillight lens cover does not violate Florida law). Thus, here, the two key elements the Court should look at are the text of Mo. Rev. Stat. § 307.075, and the Kienzle case, 944 S.W.2d 326. The Kienzle case, as set forth above, clearly supports that Defendant's cracked/broken taillight through which white light is shining through violates Mo. Rev. Stat. § 307.075. The text of § 307.075, as discussed in detail below, also supports that Defendant's broken/taillight with white light shining through is a violation of the statute.

### C. No Mistake of Law

In light of Kienzle, 944 S.W.2d at 326, and the text of Mo. Rev. Stat. § 307.075, there was no mistake of law by Officer Fitzgerald in his interpretation of Mo. Rev. Stat. § 307.075. Officer Fitzgerald's interpretation of § 307.075 as prohibiting a cracked or broken taillight which allows white light to shine through is consistent with the Kienzle opinion which states that an officer is "justified in stopping [a driver]..... [when the] vehicle had a broken right taillight, with "white light" shining through, an apparent violation of § 307.075," and the text of § 307.075, which states a vehicle's taillights must "exhibit a red light" and be "in operable condition". Thus, Officer Fitzgerald was not mistaken as to the law and had an objectively reasonable suspicion to believe that Defendant's cracked/broken taillight was violating the traffic laws of Missouri. This reasonable suspicion supported probable cause for Officer Fitzgerald to stop Defendant's vehicle.

### D. Reasonable Mistake of Law

Even if the Court were to assume that Officer Fitzgerald's interpretation of Mo. Rev. Stat. § 307.075 was a mistake of law, in that Mo. Rev. Stat. §307.075 were to be determined not applicable to a cracked/broken taillight emitting white light, this mistake, under the circumstances of this case, would be a reasonable mistake of law. The Supreme Court has held that an objectively reasonable mistake of law can support reasonable suspicion for suspecting a particular person of breaking the law, and such reasonable suspicion is sufficient to support a valid traffic or investigatory stop. Heien, 135 S.Ct. at 536-540. The Fourth Amendment requires government officials to act reasonably, not perfectly. Id. at 536. An officer may make a mistake, including a mistake of law, yet still act reasonably under the circumstances. Id. When

6

an officer acts reasonably under the circumstances he is not violating the Fourth Amendment. Id. at 539.

To determine whether a mistake of law is objectively reasonable the Court does not examine the subjective understanding of the particular officer involved. Id. An officer can gain no Fourth Amendment advantage through a sloppy study of the laws he is duty bound to enforce. Id. Rather, the question of whether a mistake of law is reasonable is determined based on an objective review of the text of the statute in conjunction with any case law interpreting the statute. See Id. at 540 (officer's belief that defendant's faulty right brake light was a violation of North Carolina law was found to be an objectively reasonable mistake of law based on the text of the statute and no previous North Carolina case law construing the statute contrary to the interpretation of the officer).

In reviewing the text of the statute (as set forth above), this court finds that Officer Fitzgerald's interpretation of § 307.075 as requiring brake lights to emit only red light, and not have cracks or holes which emit white light, is a fair and reasonable interpretation of § 307.075's requirements that brake lights "exhibit a red light" and be "in operable condition". Defendant's argument that the text of the statute does not prohibit white light from shining through a vehicle's taillights so long as the necessary red light is observed from the taillights at the required distance of 500 feet, while plausible, is nonetheless, insufficient to make Officer Fitzgerald's interpretation of the statute unreasonable.

First, while "in operable condition" is not defined in § 307.075, a reasonable inference can be drawn, from the text of the statute as a whole, that a cracked or broken taillight which emits white light instead of the red stated as required in the statute, is not in the operable condition.

Second, the purpose of the taillight requirements as set forth in the text of Mo. Rev. Stat. § 307.075 is obviously to ensure the safety of Missouri drivers. Because § 307.075 pertains to safety, it was objectively reasonable for Officer Fitzgerald to be concerned with white light emitting from Defendant's taillights and to believe § 307.075 forbids such cracked or broken taillights. The Court notes that when properly operable vehicles are in "reverse" gear both white and red light emits from the taillight. When a vehicle is in "drive" only red light should emit from the taillight. Because of this, white light coming from a cracked or broken taillight could cause a traffic hazard. White light emitting from rear taillights would indicate to most other

7

drivers that the vehicle is approaching them in reverse in the same traffic lane, thus causing confusion. A driver of a car traveling behind such a vehicle might take evasive action to avoid what is perceived as oncoming vehicle, and this reaction could increase the risk of accident by a significant degree.

In reviewing the case law interpreting Mo. Rev. Stat. § 307.075, as discussed in detail above, the Court finds Officer Fitzgerald's interpretation to be objectively reasonable. The Southern District of Missouri Court of Appeals in the Kienzle case, 944 S.W.2d at 326, stated that "a broken taillight with the white light shining through [is] an apparent violation of § 307.075." There is no case law to the contrary. In fact, there is no other case law even addressing this statute's requirements as to taillights. Officer Fitzgerald's interpretation, consistent with Kienzle, cannot be held unreasonable. See Heien, 135 S.Ct. at 540 (officer's belief that defendant's faulty right brake light was a violation of North Carolina law was found to be an objectively reasonable mistake of law based on the text of the statute and no previous North Carolina case law construing the statute contrary to the interpretation of the officer). Law enforcement officers need not be lawyers and should not be expected to understand every nuance of a particular law, especially when case law supports the officer's interpretation. See United States v. Martin, 411 F.3d 998, 1001-1002 (8th Cir. 2005).

Any mistake of law by Officer Fitzgerald as to whether white light emitting from the taillight of Defendant's vehicle was a violation of Missouri state law was objectively reasonable under the circumstances of this case. Therefore, Defendant's argument that Officer Fitzgerald's mistake of law resulted in the unreasonable stop of his vehicle, without the necessary probable cause, in violation of the Fourth Amendment, is without merit.

## **Conclusion**

Officer Fitzgerald had reasonable suspicion and probable cause to stop Defendant's vehicle for a cracked/broken taillight which was emitting white light in violation of Mo. Rev. Stat. § 307.075. Accordingly, the consensual searches of Defendant's person and vehicle, subsequent to the lawful vehicle stop, were also lawful and did not violate defendant's Fourth Amendment rights.

IT IS THEREFORE RECOMMENDED that Defendant's motion to suppress be denied [20].

Dated this 20th day of July, 2015, at Jefferson City, Missouri.


/s/ *Matt J. Whitworth*
MATT J. WHITWORTH
United States Magistrate Judge